**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

| | |
|---|---|
| BALLY GAMING, INC., a Nevada corporation d/b/a BALLY TECHNOLOGIES,<br><br>　　　Plaintiff,<br><br>vs.<br><br>IGT, a Nevada corporation,<br><br>　　　Defendant.<br>_____<br>IGT, a Nevada corporation,<br><br>　　　Counterclaimant,<br><br>vs.<br><br>BALLY GAMING, INC., a Nevada corporation d/b/a BALLY TECHNOLOGIES,<br><br>　　　Counterdefendant.<br>_____ | 3:06-CV-0483-ECR-RAM<br><br><br><br>**ORDER** |

　　Plaintiff Bally Gaming, Inc. ("Bally"), owns United States Patent 7,100,916 ("'916"). Bally filed its Complaint (#1) on September 5, 2006, alleging that various of Defendant IGT's games infringe the '916 patent. Defendant IGT ("IGT") filed its Answer and Counterclaim (#8) on October 6, 2006, and its Second Amended Answer (#64) on May 25, 2007. IGT's counterclaims include claims

for declaratory judgment (1) that the '916 patent is not infringed, (2) that the '916 patent is invalid, and (3) that Bally has engaged in inequitable conduct rendering the '916 patent unenforceable.

IGT originally filed its motion for summary judgment (#92) on September 17, 2007. Bally sought to stay briefing on the summary judgment motion and IGT conversely sought to stay claim construction proceedings. Resolving ambiguities in the law in favor of IGT, the Court construed Dana Corp. v. American Axle & Manufacturing, Inc., 279 F.3d 1372 (Fed. Cir. 2002) as precluding this court from addressing IGT's summary judgment motion prior to claim construction. (Order (#116) of October 4, 2007.) After a Markman hearing, the Court issued its Order (#122) construing the '916 patent on December 11, 2007.

IGT filed its Amended Motion for Summary Judgment (#124) on December 31, 2007.[1] On January 24, 2008, Bally filed its Opposition (#152), and on February 8, 2008 IGT filed its Reply (#162). On February 14, 2008, Bally filed a motion to strike (#170) what Bally characterized as new material filed with IGT's Reply. The Court granted (#192) Bally's Motion (#170) in part, allowing Bally to file a sur-reply to address new declarations and newly deposed witnesses. Bally filed its Sur-reply (#198) on May 5, 2008.[2]

---

[1] IGT filed a motion to stay discovery (#136) until after the resolution of the motion for summary judgment, which the Magistrate Judge denied (#186) on February 19, 2008.

[2] The Court's Order (#192) stated: "The sur-reply shall be limited to fifteen (15) pages and shall address only the claimed new material contained in IGT's Reply (#162)." The Court notes that only four of the sixteen pages in the Sur-Reply actually address this evidence.

2

1    On July 10, 2008, IGT filed another Motion for Summary Judgment
2 (#229), this time focusing specifically on the issue of obviousness.
3 Only July 17, 2008, Bally filed a Motion (#269) to strike IGT's
4 Motion (#229).  Our August 25, 2008, Minute Order (#319) denied
5 Bally's Motion to Strike (#269).  On September 5, 2008, Bally timely
6 filed its Opposition (#325) to IGT's Motion (#229).
7    No party has requested oral argument.  See Local Rule 78-2 (any
8 motion may be decided "with or without a hearing"); Dredge Corp. v.
9 Penny, 338 F.2d 456, 461-62 (9th Cir. 1964) (notwithstanding local
10 rules, a district court may not preclude or deny a request for oral
11 argument at summary judgment unless the motion is denied).  The
12 issues involved in these motions are straightforward and the Court
13 finds that oral argument would not be helpful.
14    For the reasons stated below, IGT's motion for summary judgment
15 (#229) must be **GRANTED** because the asserted claims are obvious
16 within the meaning of 35 U.S.C. § 103.

17
18              **I.  Summary Judgment Standard**
19    Summary judgment allows courts to avoid unnecessary trials
20 where no material factual dispute exists.  N.W. Motorcycle Ass'n v.
21 U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).  The court
22 must view the evidence and the inferences arising therefrom in the
23 light most favorable to the nonmoving party, Bagdadi v. Nazar, 84
24 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment
25 where no genuine issues of material fact remain in dispute and the
26 moving party is entitled to judgment as a matter of law.  Fed. R.
27 Civ. P. 56(c).  Judgment as a matter of law is appropriate where
28

3

there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party.  Fed. R. Civ. P. 50(a).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may proceed either by producing affirmative evidence negating an essential element of the nonmoving party's claim or by showing that the nonmoving party does not have enough evidence to carry its ultimate burden of persuasion at trial.  Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1103-04 (9th Cir. 2000).  See also Celotex, 477 U.S. 317; Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  A moving party seeking to proceed by the latter route can meet its initial burden simply by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," Celotex 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)), but before presenting such a motion, the moving party must have made reasonable efforts to discover whether the nonmoving party has enough evidence to carry its burden at trial.  Nissan Fire, 210 F.3d at 1105-06.

4

Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). If a moving party fails to carry its initial burden of production, however, the non-moving party has no obligation to produce anything and the motion will be denied. <u>Nissan Fire</u>, 210 F.3d at 1102-03.

Although the parties may submit evidence in an inadmissible form--namely, depositions, admissions, interrogatory answers, and affidavits--only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c); <u>Beyene v. Coleman Sec. Servs., Inc.</u>, 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. <u>Anderson</u>, 477 U.S. at 248. Summary judgement is not proper if material factual issues exist for trial. <u>B.C. v. Plumas Unified Sch. Dist.</u>, 192 F.3d 1260, 1264 (9th Cir. 1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts should not be considered. <u>Id.</u> Where there is a complete failure of proof on an

5

essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. Id.

## II.  Discussion

### A.  Introduction

The abstract of the '916 patent outlines the purported invention as follows:

> An electromechanical indicator including a body with an axis of rotation. The rotary body is provided with a number of segments radiating from the axis of rotation which are associated with at least two different indicia. A motor is coupled to the rotary body such that the rotary body is adapted for a rotating mode and a stationary mode about the axis of rotation. A pointer associated with the rotary body is adapted to point to a predetermined segment of the number of segments when the rotary body is in the stationary mode. A segment detector detects a rotary position of each of the number of segments. In operation, the motor rotates the rotary body to point the pointer to the predetermined segment.

'916 Patent Abstract. In other words, the '916 patent generally concerns a motorized wheel indicator — in short, a dial. The specification refers to "mechanical indicators in game systems" and, in turn, the games discussed in the specification are all "roll down" games of skill. See '916 Patent 1:46-50. In the course of the patent prosecution, the specification and claims were edited to expand the types of games covered by the patent beyond the scope of arcade games. (See Order (#122) of December 11, 2007.)

Plaintiff Bally asserts that Defendant IGT is infringing Bally's patent with its "wheel games," including the common "Wheel

6

of Fortune" slot machine, which Bally suggests is "the most successful slot machine in history." (Sur-Reply in Support of Bally's Opposition (#198), p. 10.)

IGT's sales invoices reveal that a "Stepper Mini Bertha" machine was sold to Circus Circus in May 1990. (Ex. 2 to Bittman Decl. (#126).) IGT claims that this was the "Topsy Turvy" machine; the invoices refer to a "free play" device and a "Stepper Mini Bertha," but the invoices do not specifically refer to the machine by the name "Topsy Turvy." There is, however, a picture of the Topsy Turvy machine in Circus Circus in a July/August 1990 publication. The game had four dials on its face that effectively displayed slot machine reels from the side "so that all reel symbols are visible to the player." ("Slot Line," July/August 1990, Ex. 1 to Bittman Decl. (#126).) Peter Walker, a photographer for IGT, states in his declaration that he took the photograph in May or June 1990. (Walker Decl. (#129) ¶ 5.) Walker took another picture of the Topsy Turvy machine in the IGT warehouse, which is dated April 1990. (Id. ¶ 6, Ex. 5.)

Carl Kniesteadt is Chief Game Designer at IGT. His declaration states that an IGT sales representative, Ken Swanson, requested that he estimate how much it would cost to design a "Stepper Mini Bertha." Kniesteadt's request accompanies his declaration. According to Kniesteadt, the Topsy Turvy was built for Circus Circus based on IGT's Stepper Mini Bertha technology pursuant to the request. (Kniesteadt Decl. (#127) ¶¶ 407.)

Paul Millare was a draftsman and engineer for IGT from 1985 to 1995. (Millare Decl. (#128) ¶ 1.) His declaration states that

7

1 he worked on designing and building Topsy Turvy, and that the design
2 was similar to and based upon the previous Stepper Mini Bertha
3 machines. (Id. ¶ 3.) After 1995, Millare worked for Mikohn Gaming
4 and Progressive Gaming International Corporation on the same types
5 of systems. Drawings of Stepper Mini Bertha and "Colossus" machines
6 were transferred from IGT to Mikohn Gaming. As exhibit 2 to his
7 declaration, Millare has attached a technical drawing of Topsy Turvy
8 from Mikohn Gaming's files. Millare summarized the machine
9 components based on the drawing as follows:

> As shown on the assembly drawing that I prepared, each wheel assembly of the Topsy Turvy machine had a wheel (labeled number 6, "Reel Disk") that had 22 segments. Connected to each wheel was a stepper motor (labeled number 23, "Motor") which caused the wheel to rotate and stop. The stepper motor was controlled by a microprocessor based controller. The wheel assembly also had an optical detector assembly (labeled numbers 24 and 25) that worked in combination with a disk encoder (labeled number 8) for detecting the rotational position of each wheel so that the controller could determine the specific segment to which the wheel's pointer was pointing. As shown in the assembly drawing of the Topsy Turvy machine, at the center of each wheel was a smaller disc (labeled number 2, "Cover Plex") that was held in place by a screw (labeled number).

18 (Id. ¶ 6.)

19   Plaintiff argues that the Kniesteadt, Bittman, Walker, and
20 Millare declarations are made without personal knowledge. The
21 objection is meritless. Plaintiff also argues that the Kniesteadt,
22 Bittman, Walker, and Millare declarations are uncorroborated. This
23 objection is also meritless.

24   IGT's motion (#124) seeks summary judgment that the asserted
25 claims of the '916 patent — claims 1-6, 8-18, and 21-22 — are
26 invalid as anticipated by the Topsy Turvy slot machine. IGT further
27 argues that claims 2 and 3 were obvious. IGT's next motion for

8

summary judgment (#229) somewhat overlaps its first: in this motion, IGT argues that claims 1-6 and 8-22 are all invalid as obvious. In opposition (#325), Bally argues that some of IGT's evidence is inadmissible. Bally also argues that IGT has failed to show that the '916 Patent's claims are obvious, relying both on analysis of the prior art and on secondary considerations of nonobviousness.

Because we find, as explained below, that claims 1-6 and 8-22 are indeed invalid as obvious, we need not address the issue of anticipation raised by IGT's first motion for summary judgment.

### B. Obviousness Standard

A patent may be invalidated as obvious "if the difference between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Obviousness is a question of law. See Richardson-Vicks, Inc. v. Upjohn Co., 122 F.3d 1476, 1479 (Fed. Cir. 1997); see also Quad Evtl. Techs. Corp. v. Union Sanitary Dist., 946 F.2d 870, 876 (Fed. Cir. 1991) ("The courts are the final arbiter of patent validity and, although courts may take cognizance of, and benefit from, the proceedings before the patent examiner, the question is ultimately for the courts to decide, without deference to the rulings of the patent examiner."). The legal conclusion as to obviousness is, of course, based on underlying factual determinations, including: "(1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) the extent

of any proffered objective indicia of nonobviousness, sometimes termed secondary considerations, such as commercial success, long felt but unresolved needs, and failures of others." Dystar Textilfarben GmbH v. C.H. Patrick Co., 464 F.3d 1356, 1360 (Fed. Cir. 2006) (citing Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966)).  Obviousness is evaluated on a "claim by claim" basis. Dystar, 464 F.3d at 1372.

The Supreme Court has recently observed that "[g]ranting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may, in the case of patents combining previously known elements, deprive prior inventions of their value or utility."  KSR Int'l Co. v. Teleflex Inc., 127 S.Ct. 1727, 1741 (2007); see also John F. Duffy, Inventing Invention: A Case Study of Legal Innovation, 86 TEX. L. REV. 1, 12 (2007) ("The most important function of the nonobviousness doctrine is to prevent individuals from patenting obvious, yet economically significant, responses to new conditions or 'exogenous' developments — i.e., developments achieved through some cause not attributable to the patent applicant's efforts.  There is no good substitute for the nonobviousness doctrine in these circumstances.").  "[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art."  KSR, 127 S.Ct. at 1741.  However, "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  Id. at 1737.  "If a person of ordinary skill can

10

implement a <u>predictable variation</u>, § 103 <u>likely bars</u> its patentability." Id. at 1740 (emphasis supplied).

KSR teaches that "a person of ordinary skill is also a person of ordinary creativity, not an automaton." Id. at 1742. A combination of elements may therefore be found obvious if that combination was "obvious to try."[3] Id. "[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond that person's skill." Id. at 1740. More broadly, KSR instructs that "ordinary innovation" in combining prior art is not patentable:

> We build and create by bringing to the tangible and palpable reality around us new works based on instinct, simple logic, ordinary inferences, extraordinary ideas, and sometimes even genius. These advances, once part of our shared knowledge, define a new threshold from which innovation starts once more. And as progress beginning from higher levels of achievement is expected in the normal course, <u>the results of ordinary innovation are not the subject of exclusive rights under the patent laws</u>. Were it otherwise patents might stifle, rather than promote, the progress of useful arts. See U.S. Const., Art. I, § 8, cl. 8.

KSR, 127 S.Ct. at 1746 (emphasis supplied).

KSR noted that:

> [a]lthough common sense directs one to look with care at a patent application that claims as innovation the combination of two known devices according to their established functions, it can be important to identify a reason that would have prompted a person of ordinary skill in the

---

[3] This holding overruled longstanding lower court precedent dating back to the 1960s. See Harold C. Wegner, Commentary, *Making Sense of KSR and Other Recent Patent Cases*, 106 MICH. L. REV. FIRST IMPRESSIONS 39, 41 (2007), available at http://www.michiganlawreview.org/firstimpressions/vol106/wegner.pdf.

11

> relevant field to combine the elements in the way the claimed new invention does.

Id. at 1741.  "[T]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness."  In re Kahn, 441 F.3d 977, 988 (Fed. Cir. 2006); see also KSR, 127 S.Ct. at 1741 ("To facilitate review, this analysis should be made explicit.") (citing Kahn, 441 F.3d at 988).

A court should be wary of reasoning based on hindsight, KSR, 127 S.Ct at 1742; Graham, 383 U.S. at 36,[4] and the patent challenger must make a factual showing of obviousness by clear and convincing evidence.  PharmaStem Therapeutics, Inc. v. ViaCell, Inc., 491 F.3d 1342, 1360 (Fed. Cir. 2007).  Nevertheless, "[t]he ultimate judgment of obviousness is a legal determination," 127 S.Ct. at 1745, and a conclusory expert affidavit cannot prevent summary judgment.  Id.

"Once a prima facie case of obviousness has been established, the burden shifts to the applicant to come forward with evidence of nonobviousness to overcome the prima facie case."  In re Huang, 100 F.3d 135, 139 (Fed. Cir. 1996).  Secondary considerations of "objective evidence of commercial success, long-felt but unsolved needs, failure of others, and copying" are "relevant to this inquiry."  Id.  The Federal Circuit has recently sought to clarify that under Federal Circuit law the burden on a challenger to a

---

[4] On the other hand, the Supreme Court stated in KSR that, in applying a rigid "TSM" test for obviousness, "[t]he Court of Appeals . . . drew the wrong conclusion from the risk of courts and patent examiners falling prey to hindsight bias."  127 S.Ct. at 1742; see also Duffy, Inventing Invention, supra, at 64-65 ("If the problem of hindsight were the only consideration relevant when applying obviousness, the best solution would be to abolish the doctrine entirely.  All obviousness inquiries suffer from the possibility of hindsight bias because they are inherently retrospective.").

patent never changes even when the burden of production is shifted to the other party after the challenger puts forward a prima facie case of invalidity. Pfizer, Inc. v. Apotex, Inc., 480 F.3d 1348, 1359 (Fed. Cir. 2007) (quotations and citations omitted).

**C. Analysis**

    1. Prima Facie Obviousness

As an initial matter, the record reveals that slot machines that used dials rather than reels were utilized in the early twentieth-century, and were therefore well known long before Topsy Turvy and the '916 patent.[5] (Ex. 4 to Sertell Decl. (#165-6).) Simply utilizing a wheel or dial instead of a reel in a slot machine was not novel in the least.

Bally argues that there is no evidence that Topsy Turvy utilized a "predetermined segment" (claims 1-6, 8-18) or a "predetermined result" (claim 19-22) as required by the '916 patent. (P.'s Opp. 14 (#325).) Essentially, although the argument is phrased as an evidentiary challenge, Bally is suggesting that Topsy Turvy used its dials as randomizers rather than purely as indicators. Utilizing a random number generator and stopping a reel at a predetermined segment was known in the art. Telnaes, U.S. Patent No. 4,448,419 ('419). The evidence indicates that Topsy Turvy utilized the Stepper Mini Bertha and Telnaes methods and that the Topsy Turvy game dials were therefore not physical randomizers (Safari Decl. (#166)). Bally argues that the source code relied

---

[5] Bally has objected to certain evidence and theories presented by IGT in its motion for summary judgment (#229). To the extent that this Order relies on evidence or theories to which Bally has objected, the objection is overruled.

upon by Safari and the PAR sheets relied upon by Kniesteadt are not associated with Topsy Turvy based upon the number of outcomes in the game. (P.'s Opp 15 (# 325).)  Even if true, the combination of Telnaes and the dials on Topsy Turvy (or other prior wheel machines) would have been obvious to one skilled in the art.  The advantages of using a random number generator disclosed in Telnaes, '419 Patent 2:3-51, would have been obviously present in a slot machine regardless of whether the machine had a dial or a reel.  To conclude otherwise would be simply to ignore common sense. See KSR, 127 S.Ct. at 1742.

Bally also argues that the Topsy Turvy machine's segments were not game results. (P.'s Opp. 17 (# 325).)  Essentially, Bally seeks to import a limitation from the specification's disclosure of a "roll down" arcade game, rendering a "result" a "game result." The Court finds no basis to read this limitation from the specification into any of the asserted claims.[6]  However, even if the Court found such a basis, it is still the case that slot machines with wheels showing game outcomes were known in the art. (Ex. 2 (Pickardt, GB Patent No. 2,201,821 A), Ex. 4 (describing and picturing early twentieth-century slot machines), attached to Sertell Decl. (#165-6).)  Furthermore, the notion that a spinning

---

[6] Notably, the advantage disclosed for roll down arcade games were that the wheel made a boring game exciting, not that one wheel was better than several reels. See SciMed Life Sys. v. Adv. Cardiovascular Sys., Inc., 242 F.3d 1337, 1341 (Fed. Cir. 2001). The simple fact that the words "result" and "segment" have different meanings does not mean that a "predetermined result" means "predetermined game outcome."

14

object may represent the outcome of a game is as rudimentary as the children's game "Spin the Bottle."

Bally also argues that Topsy Turvy did not incorporate a "segment detector" (claims 1-6, 8-10). (P.'s Opp. 17 (# 325).) The evidence indicates that Topsy Turvy did have a segment detector (Millare Decl. (#128) ¶ 6; Sertell Decl. ¶ 13-14 (#165)), but, in any case, the utility of such devices was known in the art. See '419 Patent. Once again, there is no reason why one with skill in the art would not have seen that the utility of the segment detection device extended to dial as well as reel slot machines.

Bally argues that the segments in Topsy Turvy did not have "numeric values" (claim 2), or alternatively, "symbolic values" (claim 3), and that the usage of such values was unknown in the art. (P.'s Opp. 19-21 (# 325).) This argument fails: the usage of numeric and symbolic values was known in the art. At one point, Bally's expert goes so far as to argue that 1, 2, 3, 4, 5, and 6 are not numerical values. The argument is absurd.

In sum, the asserted claims are prima facie obvious.

### 2. Secondary Considerations

Bally further argues that the success of the "Spin-to-Win" arcade game and IGT's Wheel of Fortune machine is a secondary consideration which should defeat summary judgment. (P.'s Opp. 26-29.) This argument does not hold water.

First, in light of the prior art and the nature of the asserted claims here, the strength of the showing of obviousness is not in any way negated by the secondary consideration of commercial success. See KSR, 127 S.Ct. at 1738, 1745-46 (affirming summary

15

judgment despite the presence of commercial success); <u>Leapfrog Enters., Inc. v. Fisher-Price, Inc.</u>, 485 F.3d 1157, 1162 (Fed. Cir. 2007) ("substantial evidence of commercial success, praise, and long-felt need" was inadequate "given the strength of the prima facie obviousness showing"); <u>Sandt Technology, Ltd. v. Resco Metal and Plastics Corp.</u>, 264 F.3d 1344, 1355 (Fed. Cir. 2001) (affirming grant of summary judgment where secondary consideration of commercial success was insufficient in light of <u>Graham</u> analysis); <u>see also</u> <u>Graham</u>, 383 U.S. at 35-36 (holding that secondary factors do not always "tip the scales of patentability").

Second, notwithstanding the suggestion that the Wheel of Fortune machine was successful "predominantly because of [the] wheel," (Rivera Depo. 94, Ex. J to Kennedy Decl. (#199)), the mere existence of a wheel indicator as part of a slot machine was not at all novel. Plaintiff seems to suggest that the popularity of the game is attributable to the fact that the dial indicated the outcome of the game. (P.'s Opp. 28 (#325).) Because the Court does not find that there is any "predetermined game result" limitation in the asserted claims of the '916 patent, as opposed to mere "predetermined result" limitation, the Court finds no evidence of a nexus between the commercial success and the purported novelty of the invention. <u>See, e.g.</u>, <u>Muniauction, Inc. v. Thomson Corp.</u>, No. 2007-1485, slip. op., __ F.3d __, 2008 WL 2717689, at *8 (Fed. Cir. July 14, 2008) (reiterating that "[a] nexus between the merits of the claimed invention and evidence of secondary considerations is required in order for the evidence to be given substantial weight in an obviousness decision.").

16

### III. Conclusion

All of the asserted claims of the '916 patent are obvious under 35 U.S.C. § 103.  Bally's substantial evidence regarding commercial success is here inadequate to allow Bally to survive summary judgment in light of the strength of the prima facie showing of obviousness and the lack of a nexus between the commercial success and the purported novelty of the invention.

**IT IS, THEREFORE, HEREBY ORDERED** that Defendant IGT's motion for summary judgment (#229) on the issue of invalidity is **GRANTED**.

**IT IS FURTHER ORDERED** that the other pending motions (##124, 235, 239, 243, 252) dealing with the infringement, validity, or enforceability of the '916 patent are **DENIED** as moot.

IGT's proposed (#203) Third Amended Counterclaim[7] would drop the sixth claim for relief against Bally and amend the current fifth claim of relief to become a claim for breach of purchase agreement and a request for an injunction against both Bally and Sierra Design Group.  Notably, the current fifth claim for relief already seeks relief against Bally.  (Amended Counterclaim (#67) ¶ 82-83.)  The

---

[7] The full caption of the proposed (#203) amended Answer is "Second Amended Answer to Plaintiff Bally's Complaint for Patent Infringement; Third Amended Counterclaims For Declaratory Judgment of Non-infringement, Invalidity, Unenforceability and Rights under Purchase Agreement, and Breach of Contract; and Amended Third-party Complaint for Declaratory Judgment of Rights under Purchase Agreement and Breach of Contract."

17

time for amending the pleadings passed on May 25, 2007. (Order (#52) of Dec. 11, 2006.) As Bally notes, "good cause" must be shown to allow this extremely untimely amendment to the scheduling order. See Fed. R. Civ. P. 16(b)(4). In light of the facts that (1) discovery is now closed and (2) IGT actually pleaded the basis for its amendment in a previous counterclaim (Amended Counterclaim (#67) ¶ 25), this showing has not been made.

**IT IS, THEREFORE, FURTHER ORDERED** that IGT's Motion for Leave to File Second Amended Answer, Counterclaims and Third-Party Complaint (#203) is **DENIED**. IGT's Motion (#224) for summary judgment on claims asserted in the proposed Third Amended Counterclaim is therefore **DENIED** as moot.

The remaining claims in this case are as follows: IGT's Fourth Claim for Relief against Sierra Design Group ("Declaratory Judgment of IGT's Rights Pursuant the Purchase Agreement against Bally and SDG"); IGT's Fifth Claim for Relief against Sierra Design Group ("Breach of the Purchase Agreement and Request for Injunction against SDG"); IGT's Sixth Claim for Relief against Bally ("Intentional Interference with Contractual Relations against Bally"). Pending before the Court are four motions for summary judgment relating to these remaining claims: two motions for summary judgment on IGT's Fourth, Fifth, and Sixth Counterclaims due to lack of breach, one brought by Sierra Design Group (#244) and one brought by Bally (#250); and two motions for summary judgment on IGT's Fourth, Fifth, and Sixth Counterclaims due to patent misuse, one

brought by Sierra Design Group (#245) and one brought by Bally (#253).

It appears to the Court that the remaining claims may be moot or that IGT may not wish to pursue them. If these claims are moot or if IGT does not wish to pursue them, the pending motions relating to them would also be moot.

The parties shall have fifteen (15) days from the date of entry of this Order within which to file a statement of their positions on this issue.

DATED: This __9th__ day of September, 2008.

_____
UNITED STATES DISTRICT JUDGE

19